**ORIGINAL**

# NOTE

| July 2, 2008 | Sewickley | Pennsylvania |
|---|---|---|
| [Date] | [City] | [State] |

6717 HAVERFORD DR., Philadelphia, PA 19151
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COSMOPOLITAN MORTGAGE, INC. and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Seven Thousand Seven Hundred Ninety Three And 00/100 Dollars (U.S. $107,793.00), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six And Three-Fourths percent (6.750%) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on August 1, 2008. Any principal and interest remaining on the first day of July, 2038, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 37 NORTH CENTER STREET, ORANGE, NJ 07050 or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $699.14. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge  ☐ Growing Equity Allonge  ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

36.5  Page 1 of 2  FHA Multistate Fixed Rate Note -- 12/01



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*Lorrie Ann Thorne*    7/2/08
- BORROWER - LORRIE ANN THORNE - DATE -

*[Sign Original Only]*

Without Recourse, Pay to the Order of:
Security Atlantic Mortgage Co. Inc.

Cosmopolitan Mortgage Inc

*[signature]*

Noel Chapman, Vice President
by Power of Attorney

---

WITHOUT RECOURSE, PAY TO THE ORDER OF:

**Countrywide Bank, FSB**

SECURITY ATLANTIC MORTGAGE CO. INC.

_____
JOHANNA BREBELSKY
ASSISTANT SECRETARY

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _Laurie Meder_
LAURIE MEYER
SENIOR VICE PRESIDENT

After Recording Return To:
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
ATTN: Shipping Department
(732) 738-7100

Prepared By:
Christie Clementelli
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
(732) 738-7100

Property Address:
6717 HAVERFORD DR.
Philadelphia, PA 19151

51935165
Page: 1 of 9
07/10/2008 11:31A

This Document Recorded
07/10/2008
11:31AM
Doc Code: M

Doc Id: 51935165
Receipt #: 723390
Rec Fee: 126.50
Commissioner of Records, City of Philadelphia

[Space Above This Line For Recording Data]

## MORTGAGE

THORNE

THIS MORTGAGE ("Security Instrument") is given on **July 2, 2008**. The mortgagor is **LORRIE ANN THORNE, SINGLE WOMAN** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **COSMOPOLITAN MORTGAGE, INC.** ("Lender") is organized and existing under the laws of **NEW JERSEY**, and has an address of **37 NORTH CENTER STREET, ORANGE, NJ 07050**. Borrower owes Lender the principal sum of **One Hundred Seven Thousand Seven Hundred Ninety Three And 00/100** Dollars (U.S. **$107,793.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **July 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Philadelphia** County, Pennsylvania:
SEE ATTACHED SCHEDULE A
PARCEL# 344006900
which has the address of **6717 HAVERFORD DR., Philadelphia**, Pennsylvania **19151** ("Property Address");

FHA PENNSYLVANIA MORTGAGE
← 400.8                               Page 1 of 8



TOGETHER WITH the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments

FHA PENNSYLVANIA MORTGAGE
400.8                    Page 2 of 8

for items (a), (b), and (c).

    **3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

    <u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    <u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    <u>Third</u>, to interest due under the Note;

    <u>Fourth</u>, to amortization of the principal of the Note; and

    <u>Fifth</u>, to late charges due under the Note.

    **4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall be include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

    **5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA PENNSYLVANIA MORTGAGE
400.8                      Page 3 of 8



6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
   
   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
   
   (i) All or part of the Property, or a beneficial interest in a trust owing all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

FHA PENNSYLVANIA MORTGAGE
400.8                                Page 4 of 8

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that is secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by

FHA PENNSYLVANIA MORTGAGE
400.8                                    Page 5 of 8

delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

FHA PENNSYLVANIA MORTGAGE
400.8                                   Page 6 of 8

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may initiate foreclose by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy of sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a Sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument.
The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider            ☐ Growing Equity Rider        ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider  ☐ Graduated Payment Rider
☐ Other(s) [specify]

FHA PENNSYLVANIA MORTGAGE
400.8                          Page 7 of 8

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 5 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

This is a contract under seal and may be enforced under 42 Pa.C.S. Section 5529(b).

*Lorrie Ann Thorne*                    7/2/08
- BORROWER - LORRIE ANN THORNE - DATE -

[Space Below This Line For Acknowledgment]

**STATE OF** Pennsylvania

**COUNTY OF** Philadelphia

On this the 2nd day of July, 2008, before me, *Edward L. Hocker*, the undersigned officer, personally appeared LORRIE ANN THORNE, SINGLE WOMAN, known to me (or satisfactorily proven) to be the person(s) whose name(s) are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

*Edward L. Hocker*
Notary Public

My Commission Expires: 3/25/10

Notarial Seal
Edward L. Hocker, Notary Public
Glenolden Boro, Delaware County
My Commission Expires Mar. 25, 2010

CERTIFICATE OF RESIDENCE: I do certify that the precise address of the within named Mortgagee is 1818 Library Street, Suite 300, Reston, VA 20190 or P.O. Box 2026, Flint, MI 48501-2026.

Signature: _____
Agent on behalf of Mortgagee

FHA PENNSYLVANIA MORTGAGE
400.8                              Page 8 of 8

## LEGAL DESCRIPTION

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED SITUATE ON THE NORTHERLY SIDE OF HAVERFORD AVENUE AT THE DISTANCE OF 133.701 FEET WESTWARDLY FROM THE WESTERLY SIDE OF 67TH STREET, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA; CONTAINING IN FRONT OR BREADTH ON THE SAID HAVERFORD AVENUE, 15 FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID HAVERFORD AVENUE 70 FEET TO A CERTAIN 10 FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHEASTWARD INTO THE SAID 67TH STREET AND NORTHWESTWARD INTO A CERTAIN PROPOSED 30 FEET WIDE STREET NOW CALLED EDGEMORE ROAD.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY AND PASSAGEWAY AT ALL TIMES HEREAFTER, FOREVER.

BEING KNOWN AS NO. 6717 HAVERFORD AVENUE.
BRT NO

Recording Requested By/Return To:
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
ATTN: Shipping Department

This Instrument Prepared By:
Christie Clementelli
SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837
(732) 738-7100

## ASSIGNMENT OF MORTGAGE

THORNE
Loan
PIN:
MIN:

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for COSMOPOLITAN MORTGAGE, INC. (herein "Assignor") whose address is P.O. Box 2026, Flint, Michigan 48501-2026, does hereby grant, sell, assign, transfer and convey, unto COUNTRYWIDE HOME LOANS, INC., a corporation organized and existing under the laws of _____ (herein "Assignee"), whose address is 8501 FALLBROOK AVENUE, WH 50M, WEST HILLS, CA 91304, a certain Mortgage, dated July 2, 2008, made and executed by LORRIE ANN THORNE, SINGLE WOMAN whose address is: 6717 HAVERFORD DR., Philadelphia, PA 19151, to and in favor of COSMOPOLITAN MORTGAGE, INC. upon the following described property situated in Philadelphia County, Commonwealth of Pennsylvania:
SEE ATTACHED SCHEDULE A
PARCEL# 344006900

Such Mortgage having been given to secure payment of One Hundred Seven Thousand Seven Hundred Ninety Three And 00/100 Dollars (107,793.00) (Include the Original Principal Amount) which Mortgage is of record in Book, Volume, or Liber No. _____, at page _____ (or as No. _____) of the COUNTY Records of Philadelphia County, Commonwealth of Pennsylvania, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.
TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

MERS Phone: 1-888-679-6377
Page 1 of 2

Rev. 10/02

51935181
Page: 1 of 2
07/10/2008 11:38AM



This Document Recorded
07/10/2008
11:38AM
Doc Code: A    Commissioner of Records, City of Philadelphia

Doc Id: 51935181
Receipt #: 723390
Rec Fee: 124.50

Recording Requested By:
Bank of America
Prepared By:
Bank of America
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063
When recorded mail to:
CoreLogic
Mail Stop: ASGN
P.O. Box 961006
Ft Worth, TX 76161-0836

Tax ID:
Property Address:
6717 Haverford Ave
Philadelphia, PA 19151-3624
Property Location:
34 Ward City of PHILADELPHIA

52997127
Page: 1 of 2
12/08/2015 10:46AM

This Document Recorded          Doc Id: 52997127
12/08/2015                      Receipt #: 1554568
10:46AM                         Rec Fee: 220.00
Doc Code: A      Commissioner of Records, City of Philadelphia

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 400 COUNTRYWIDE WAY SIMI VALLEY, CA 93065 does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A. whose address is C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
                    FOR COSMOPOLITAN MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS
Mortgagor(s):       LORRIE ANN THORNE, SINGLE WOMAN
Date of Mortgage:   7/2/2008        Original Loan Amount:  $107,793.00

Recorded in Philadelphia County, PA on: 7/10/2008, book N/A, page N/A and instrument number 51935165

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Assigned To: COUNTRYWIDE HOME LOANS, INC.
Date of Assignment: 7/10/2008
Recording Date: 7/10/2008  Book/Liber: N/A  Page: N/A  Instrument Number: 51935181

Property Legal Description:
ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED SITUATE ON THE NORTHERLY SIDE OF HAVERFORD AVENUE AT THE DISTANCE OF 133.701 FEET WESTWARDLY FROM THE WESTERLY SIDE OF 67TH STREET, IN THE 34TH WARD OF THE CITY OF PHILADELPHIA; CONTAINING IN FRONT OR BREADTH ON THE SAID HAVERFORD AVENUE, 15 FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID HAVERFORD AVENUE 70 FEET TO A CERTAIN 10 FEET WIDE DRIVEWAY WHICH EXTENDS SOUTHEASTWARD INTO THE SAID 67TH STREET AND NORTHWESTWARD INTO A CERTAIN PROPOSED 30 FEET WIDE STREET NOW CALLED EDGEMORE ROAD. TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID DRIVEWAY AS AND FOR A DRIVEWAY AND PASSAGEWAY AT ALL TIMES HEREAFTER, FOREVER. BEING KNOWN AS NO. 6717 HAVERFORD

AVENUE. BRT NO[REDACTED]

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on 11-25-15

COUNTRYWIDE HOME LOANS, INC.

By: *[signature]*

Grace E Pena, Assistant Vice President

State of Arizona
County of Maricopa

On 11·25·15, before me, LAURA KERNS, Notary Public, personally appeared Grace E Pena, Assistant Vice President of COUNTRYWIDE HOME LOANS, INC., whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last written.

*[signature]*

Notary Public: LAURA KERNS

I hereby certify that the address of the within named assignee is:
C/O BAC, M/C: CA6-914-01-43, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

*[signature]*

Signature

LAURA KERNS
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
September 12, 2019

DocID# [REDACTED]